# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, for itself as Lead Insurer and for all Concurrent Insurers under Policy No. A2GA000832617AM, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 3:19-cv-1443 |
| v. | ) ) | |
| KING AEROSPACE COMMERCIAL CORPORATION, INC. and MAG DS CORP. d/b/a MAG AEROSPACE | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Allianz Global Risks US Insurance Company ("AGR US"), for itself as Lead Insurer and the Concurrent Insurers under Policy No. A2GA000832617AM, by and through its attorneys, brings this Complaint for Declaratory Relief against Defendant King Aerospace Commercial Corporation, Inc. ("King") and against Defendant MAG DS CORP. d/b/a MAG Aerospace ("MAG"), but solely in its capacity as an interested party, and states as follows:

### NATURE AND BACKGROUND OF THE ACTION

1.      This is an insurance coverage action. This Complaint for Declaratory Relief, filed pursuant to 28 U.S.C. § 2201, is brought to determine AGR US's obligations to King under Aviation Commercial General Liability Insurance Policy No. A2GA000832617AM (the "Policy") in connection with litigation commenced by MAG against King that is currently pending in the United States District Court for the Northern District of Texas, titled *MAG DS*

*Corp. dba MAG Aerospace v. King Aerospace Commercial Corporation, Inc.*, Civil Action No. 3:19-cv-01378-S (the "Underlying Action")[1].

2.      King is in the business of providing aviation support services including aircraft maintenance and modifications. On or about October 30, 2018, King sought indemnity under the Policy for costs King incurred to repair damage alleged to have been sustained to MAG's CFM56-7 engine, ESN 888626. Upon information and belief, King paid for those repairs in full in order to return the engine to its customer, MAG, along with MAG's aircraft. On January 10, 2019, AGR US denied coverage, because, *inter alia*, King was not "legally obligated to pay damages" and based on King's violation of Policy conditions 4.a and 4.d for failure to provide notice of the incident and for voluntarily assuming the costs of repairing the engine, respectively.

3.      Subsequently, MAG filed the Underlying Action against King alleging breach of contract and negligence claims. On March 18, 2019, King submitted the Underlying Action to AGR US for coverage under the Policy. In a position letter dated March 26, 2018, AGR US denied coverage for the Underlying Action.

4.      On April 24, 2019, AGR US agreed to provide, and is currently providing, King with a defense of the Underlying Action subject to a reservation of rights under the Policy, including but not limited to, a reservation of its right to commence a declaratory judgment action to seek a determination of its rights and obligations under the Policy.

5.      AGR US seeks a judgment declaring, *inter alia*, that the Policy does not afford insurance coverage, either defense or indemnity, for the claims, causes of action, and damages

---

[1] MAG originally commenced the Underlying Action in the United States District Court for the Eastern District of Virginia. On or about June 7, 2019, the District Court granted King's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and transferred the Underlying Action from the Alexandria Division of the Eastern District of Virginia to the Dallas Division of the Northern District of Texas pursuant to the forum selection clause contained in the contracts between the parties.

which are the subject of the Underlying Action, and that AGR US may discontinue and withdraw its defense of King in the Underlying Action.

## THE PARTIES

6.      Plaintiff, AGR US, is an insurance company that is incorporated under the laws of the State of Illinois with a principal place of business in Chicago, Illinois. AGR US is the Lead Insurer that issued the Policy.

7.      Defendant, King, is a Texas corporation, having a principal place of business at 4444 Westgrove Drive, Suite 250, Addison, Texas 75001.

8.      Defendant, MAG, is a Delaware corporation with its principal place of business at 12730 Fair Lakes Circle, Suite 600, Fairfax, Virginia 22033. MAG has an interest in this declaratory judgment action to the extent this action seeks a judgment declaring that the Policy does not afford indemnity coverage with respect to any relief that may be granted to MAG in resolution of the Underlying Action. Accordingly, MAG is a defendant in this action solely in its capacity as an interested party.

## JURISDICTION AND VENUE

9.      This action seeks declaratory judgment pursuant to 28 U.S.C. § 2201.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of costs.

11.     This Court has personal jurisdiction over King because King is incorporated in the State of Texas.

12.     This Court has personal jurisdiction over MAG. The contract between MAG and King, which is the subject of the Underlying Action, provides in § 19, Governing Law, that

"[t]his Agreement shall be governed by the law of the State of Texas, U.S.A. and exclusive venue and jurisdiction of any disputes under this Agreement shall be in Dallas, Dallas County, Texas, which is stipulated to be the place of execution and performance of this Agreement." By the terms of its contract, MAG agreed to purposely avail itself of Texas' facilities, *i.e.* the state's courts, which is sufficient to subject a party to personal jurisdiction in a later suit related to the same overall transaction, such as is the case here.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred or is occurring within the Northern District of Texas and/or under 28 U.S.C. § 1391(b)(3) since King is subject to the Court's personal jurisdiction in the Northern District of Texas.

14.     There is a real, substantial, and justiciable issue in controversy between the parties hereto with respect to the existence of insurance coverage available to King for the claims asserted in the Underlying Action by MAG.

15.     A judicial determination and declaration of the rights and obligations of AGR US is necessary in order to resolve the Parties' dispute regarding coverage. A declaratory judgment is appropriate at this time because AGR US has no adequate remedy at law that will resolve the current controversy.

## THE POLICY

16.     AGR US issued Aviation Commercial General Liability Policy No. A2GA000832617AM to King effective for the period November 9, 2017 to November 9, 2018 (the "Policy"). A true redacted copy of the Policy is attached hereto as **Exhibit "1"**.

17.     The Policy's Declarations identifies "King Aerospace, Inc., et al" as the Named Insured under the Policy.

18.    Endorsement No. 1 to the Policy – the Broad Named Insured Endorsement – changes the Named Insured on the Declarations to: "King Aerospace, Inc., King Aerospace Commercial Corporation . . . ."

19.    The Policy states that "the words 'you' and 'your' refer to the Named Insured in the Declarations and any other person or organization qualifying as a Named Insured under this policy."

20.    The Policy contains the following definitions relevant to Coverage A and Coverage D in the instant action.

## SECTION I – DEFINITIONS

\*        \*        \*

2.  **Aircraft** means any **aircraft** including engines, propellers, operating and navigating instruments and radio equipment attached to or usually attached to or carried on the **aircraft**, including component parts detached and not replaced by other similar parts, and tools therein which are standard for the make and type of **aircraft**. The term **aircraft** excludes missiles, **spacecraft** and launch vehicles.

\*        \*        \*

4.  **Aviation operations** means all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

\*        \*        \*

9.  **Impaired property** means tangible property, other than **your product** or **your work,** that cannot be used or is less useful because:

    a. it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous or

    b. you have failed to fulfill the terms of contract or agreement and

if such property can be restored to use by:

    c. the repair, replacement, adjustment or removal of **your product** or **your work** or

    d. your fulfilling the terms of the contract or agreement.

*    *    *

**14**. **Loading or unloading** means the handling of property:

    a. after it is moved from the place where it is accepted for movement into or onto an **aircraft**, watercraft or **auto**,

    b. while it is in or on an **aircraft**, watercraft or **auto** or

    c. while it is being moved from an **aircraft**, watercraft or **auto** to the place where it is finally delivered.

**Loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the **aircraft**, watercraft or **auto**.

**15**. **Loss** means an accident resulting in direct damage to tangible property. **Loss** includes any resulting loss of use.

*    *    *

**19. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, that results in **Bodily Injury** or **Property Damage** during the policy period neither expected nor intended from the standpoint of the Insured. In the event of continuing or progressive **Bodily Injury** or **Property Damage** happening over an extended length of time, such **Bodily Injury** and **Property Damage** shall be deemed to

---

be one **occurrence**, and shall be deemed to occur only when such **Bodily Injury** and **Property Damage** first commences.

\* \* \*

**21. Products-completed operations hazard:**

**a.** includes all **Bodily Injury** and **Property Damage** occurring away from the premises you own, lease, or rent and arising out of **your product** or **your work** except:

(1) products that are still in your physical possession or

(2) work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

(a) when all of the work called for in your contract has been completed;

(b) when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;

(c) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include **Bodily Injury** or **Property Damage** arising out of any of the following:

(1) the transportation of property, unless the injury or damage arising out of a condition in or on a vehicle not owned or operated by you, and that the condition was created by the **loading or unloading** of that vehicle by any Insured;

(2) the existence of tools, uninstalled equipment or abandoned or unused materials;

---

COMPLAINT FOR DECLARATORY RELIEF                                                    7

(3) products or operations for which the classification, listed in the Declarations or in a policy schedule, states that **products completed operations** are subject to the General Aggregate Limit.

\*       \*       \*

**22. Property Damage** means:

    **a.**  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

    **b.**  loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.

For purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems software, hard or floppy disks, DVD/CD-ROMS, flash memory, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\*       \*       \*

**28. Your work:**

    **a.**  means:

        (1) work or operations performed by you or on your behalf or

        (2) materials, parts or equipment furnished in connection with such work or operation.

    **b.**  includes:

(1) warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of **your work**;

(2) the providing of or failure to provide warnings or instructions.

\* \* \*

21.     The Policy provides, in relevant part, the following coverage grant for "bodily injury" and "property damage" liability:

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** to which this insurance applies resulting from your **aviation operations**. We will have the right and duty to defend the Insured against any **suit** seeking those damages. However, we will have no duty to defend the Insured against any **suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result. However:

(1) the amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**, and

(2) our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGE A, B AND D**.

**b.** This insurance applies to **Bodily Injury** and **Property Damage** only if:

---

COMPLAINT FOR DECLARATORY RELIEF                                                        9

(1) the **Bodily Injury** or **Property Damage** is caused by an **occurrence** that takes place in the **coverage territory**,

(2) the **Bodily Injury** or **Property Damage** occurs during the policy period and

(3) prior to the policy period, no Insured or any **employee** authorized to give or receive notice of an **occurrence** or claim, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such listed Insured or authorized **employee** knew, prior to the policy period, that the **Bodily Injury** or **Property Damage** occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the policy period will be deemed to have been known prior to the policy period.

c. **Bodily Injury** or **Property Damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Insured or any **employee** authorized by the Insured to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the policy period.

22.     The Policy contains the following relevant exclusions with respect to the coverage provided under Coverage A:

**2. Exclusions**

The insurance provided by Coverage A does not apply to:

*       *       *

b. **Bodily injury** or **Property Damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement…

*       *       *

j. **Property Damage** to any of the following:

*       *       *

    (4)  personal property in the care, custody or control of the insured.

\*    \*    \*

    (6)  that particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **Property Damage** included in the **products completed operations hazard.**

\*    \*    \*

**m. Property Damage** to **impaired property** or property that has not been physically injured, arising out of:

    (1)  a defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**, or

    (2)  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

\*    \*    \*

**s.**  Damages arising out of the loss of, loss or use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

23.    The Policy provides, in relevant part, the following coverage grant for "Hangarkeeper's Liability":

**COVERAGE D – HANGARKEEPER'S LIABILITY**

    **1.  Insuring Agreement**

        **a.**  We will pay those sums that the Insured becomes legally obligated to pay as damages because of **loss** to **aircraft** (subject to the deductible shown in the Declarations if applicable…) occurring while such **aircraft** is in the care, custody or control of the Insured for safekeeping, storage, service or repair. We will have the right and duty to defend any **suit** seeking those damages. We may at our discretion investigate any **loss** and settle any claim or **suit** that may result. However: ….

*     *     *

### THE UNDERLYING ACTION

24.    MAG filed a Complaint against King on March 15, 2019 in the Eastern District of Virginia (hereinafter "Complaint"). A true copy of the March 15, 2019 Complaint with exhibits is attached hereto as **Exhibit "2"**.

25.    In the Complaint, MAG alleges that on March 7, 2018, it was awarded a contract by the U.S. Marshal's Service pursuant to which MAG would lease a 2002 Boeing 737-700 aircraft (the "Aircraft") to the Justice Prisoner and Alien Transportation System ("JPATS") ("the Lease").

26.    MAG alleges that the Lease required MAG to "accomplish the work necessary to obtain a valid FAA-issued Standard Certificate of Airworthiness for the Aircraft."

27.    MAG alleges that on April 13, 2018, it entered into an Aircraft Modification Agreement ("the AMA") with King pursuant to which King would "provide assistance in servicing, modifying, and preparing the Aircraft to fulfill JPATS requirements" and "perform detailed inspections, equipment re-certifications, airworthiness directives, service bulletins, maintenance, modifications, and corrective actions on the Aircraft . . . ."

28.     The Complaint states that the AMA required that King return the Aircraft to MAG, with all maintenance work completed, by May 30, 2019.

29.     MAG further asserts that the AMA required King to deliver software to MAG no later than January 7, 2019.

30.     As described in the Complaint, King began performing the maintenance work at its facility in Ardmore, Oklahoma soon after the AMA was executed. Then, on April 19, 2018, MAG contracted with a third-party, Aircraft Inspection & Management, LLC ("AIM"), to remove and replace the booster spool of the Aircraft Engine, which required the engine be removed from the Aircraft and transported from King's Oklahoma facility to AIM's facility in Tucson, Arizona.

31.     Upon information and belief, MAG or AIM arranged for a third-party shipping company to transport the engine from King's Oklahoma facility to AIM's facility in Tucson, Arizona.

32.     MAG alleges that, on or about April 24, 2018, King "removed the engine from the Aircraft and began preparing it for transport." As part of that preparation, MAG alleges that King "procured an engine cradle to secure and stabilize the engine on the truck during transport", made a modification to the cradle to address a "small issue", and that King "then removed the engine from the Aircraft, mounted it in the cradle, and positioned it on the truck for transport."

33.     MAG asserts that "[d]ue to gross negligence, [King] failed to property secure the engine to the cradle and failed to properly secure the cradle onto the truck."

34.     According to the Complaint, on or about May 3, 2018, while in transit, "the engine moved in the cradle, fell, and was severely damaged." Upon arrival at AIM's facility, AIM discovered damage to the engine, including damage to the gearbox, the electronic engine

control, cannon plugs, wiring, the exciter box, cosmetics, and the oil scavenge. Upon opening the gearbox, AIM found four seals, seven gear shifts, and eight bearings damaged beyond repair.

35.     MAG further alleges that "[d]ue to the extensive repairs resulting from the engine drop, the airworthiness of the Aircraft was significantly and negatively affected".

36.     MAG contends that "[d]ue to the delay caused by the damage to the engine, [King] failed to return the Aircraft to MAG by May 30, 2018, as required by the AMA" and that "[d]ue to the delay caused by repairs to the gearbox, [King] did not reinstall the gearbox until August 14, 2018." It is further alleged that MAG did not receive the Maintenance Release until October 29, 2018.

37.     Regarding the software, MAG alleges that it asked King for updates on the progress of the software throughout the period of performance of the AMA, but "received only vague and limited responses" from King. Then, on January 4, 2019, the King Purchasing Manager "told MAG that he was unable to provide a further update on the software and unable even to identify the proper office or department in [King] from where the software would be coming." MAG alleges that it was never provided the software.

38.     According to the Complaint, "[d]ue to the delays and missed deadlines, MAG failed to timely deliver the properly repaired and maintained Aircraft to JPATS and thereby breached the JPATS Lease. As a result, MAG was terminated from the JPATS Lease."

39.     MAG asserts that it has suffered and continues to suffer damages due to King's breach of the AMA.

40.     Based on the foregoing allegations, MAG asserts two causes of action against King: breach of contract (Count I) and negligence (Count II).

41.     In Count I, for breach of contract, MAG asserts that the AMA obligated King to perform extensive work on the Aircraft, including inspections, maintenance, corrective actions, and system operation and calibrations checks, and to perform this work by May 30, 2018 and to deliver the software no later than January 7, 2019.

42.     MAG further alleges that King "failed to securely prepare the engine for transport, causing severe damage to the engine and its components, and breaching its obligations under the AMA." King is also alleged to have breached the AMA by failing to complete its maintenance and repair work in a timely manner and by failing to deliver the software. Furthermore, MAG asserts that King's breach of its obligations relating to the engine, mismanagement of work, delay in delivering the Aircraft, and delaying in delivering the software "defeated the purpose of the AMA."

43.     In Count I, MAG claims that, as a result of King's breach of the AMA: the Aircraft was not released for maintenance test flights until October 29, 2018; MAG has suffered severe and extensive (unspecified) damages; MAG "has incurred additional repair and service costs"; MAG was terminated from the Lease and lost revenue it would have received under the Lease; and that MAG's performance as a government contractor has been tarnished so as to impede it from competing for future contracts.

44.     In Count II, for negligence, MAG alleges that King owed a duty "to safeguard the Aircraft and all its components, to properly secure the engine to the cradle, and to securely mount the engine onto the truck", but that King was grossly negligent in doing so. Specifically, MAG alleges that King was grossly negligent in: "failing to obtain and use the appropriate cradle for the engine"; "failing to properly secure the engine to the cradle"; "failing to properly secure the engine to the truck"; "failing to prevent the engine from falling"; and "failing to prevent

damage to the Aircraft, including the engine." MAG further alleges that the damage to the engine was caused by the gross negligence of King.

45.     MAG alleges in Count II that as a result of King's gross negligence: "MAG has incurred extensive costs, expenses, and other damages and will continue to incur costs, expenses, and other damages due to [King's] gross negligence"; "MAG has incurred significant additional repair costs to the engine"; "MAG has lost substantial revenue from its contract with JPATS, including termination of the JPATS Lease due to [King's] delay in delivering a certified and airworthy Aircraft"; and that "MAG has been damaged and will continue to be damaged in the future regarding its past performance history as a government contractor."

46.     In addition to seeking compensatory damages in excess of $10 million, MAG asks that the damages be trebled and seeks punitive damages.

**THE POLICY DOES NOT AFFORD COVERAGE FOR THE UNDERLYING ACTION**

47.     There is no coverage under the Policy for the claims, causes of action, liabilities, and damages that are the subject of the Underlying Action.

48.     Under Coverage A, the Policy covers only "those sums that the insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** to which this insurance applies resulting from your **aviation operations**." The "Property Damage" must be "caused by an **occurrence**" and must occur during the policy period.

49.     There is no coverage under Coverage A for MAG's alleged loss of reputation damage since it is neither "Property Damage" as defined under the Policy, *i.e.* "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured," nor "damages because of" any covered "Property Damage" as contemplated by the Policy and applicable law.

50.    There is also no coverage under Coverage A of the Policy for MAG's claim that King failed to provide the software since it is solely a breach of contract claim, and as such, is not an occurrence, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, that results in **Bodily Injury** or **Property Damage** during the policy period…." Damages claimed from MAG's alleged loss of use of the promised software also fail to constitute Property Damage under the Policy since "Property Damage" is specifically defined to exclude "electronic data," ("[f]or purposes of this insurance, electronic data is not tangible property.").

51.    Additionally, the claim that King failed to provide the software by January 7, 2019 is not covered under the Policy as it is outside the policy period (November 9, 2017 to November 9, 2018).

52.    To the extent that the engine was repaired at King's expense and MAG's claims are in fact limited to the consequences of King's alleged failure to timely deliver the Aircraft and failure to deliver the software, MAG's claims would be purely contractual and would not involve an occurrence and thus, would not be covered under Coverage A of the Policy.

53.    However, even if MAG's damages were caused by an occurrence and the damages qualify as "Property Damage," coverage under Coverage A of the Policy is nevertheless excluded based on Exclusions b., m., j.(4), j.(6), and s.

54.    There is no Coverage A under the Policy to the extent of any damages sought by or that may be awarded to MAG for liabilities assumed by King under contract, as contemplated by Exclusion 2.b, *i.e.* excluding "... **Property Damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement...."

55.     Exclusion m. – the impaired property exclusion – precludes coverage for "Property Damage to impaired property or property that has not been physically injured, arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in your product or your work, or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." "Impaired Property" is defined as "tangible property, other than … your work, that cannot be used or is less useful because: (a) it corporates … your work that is known or thought to be defective, deficient, inadequate or dangerous or (b) you have failed to fulfill the terms of contract or agreement" and "if such property can be restored to use by: (a) the repair, replacement, adjustment or removal of … your work or (b) your fulfilling the terms of the contract or agreement." Under the Policy, "your work" means: (1) work or operations performed by you or on your behalf or (2) materials, parts or equipment furnished in connection with such work or operation…."

56.     The Complaint alleges that King was responsible for removing the engine from the Aircraft, preparing the engine for transport, obtaining the cradle (which it modified), mounting the engine into the cradle and placing the cradle onto the truck. MAG specifically alleges that King removed the engine and prepared it for transport, including procuring an engine cradle to secure and stabilize the engine on the truck during transport, and that King mounted the engine in the cradle and positioned it on the truck for transport. These responsibilities and actions of King constitute "your work" for purposes of the exclusion.

57.     Exclusion m. applies to bar coverage for MAG's claim for loss of the Lease and reputation damage because the Aircraft meets the Policy's definition of "impaired property." Specifically, the Aircraft could not be used due to King's failure to fulfill the terms of the AMA, *i.e.* delivering the Aircraft by May 30, 2018 and timely delivering the software, but its use could

be restored by King by fulfilling the terms of the AMA. Additionally, the loss of use damage to the Aircraft (the impaired property) arose out of a "defect, deficient, inadequacy or dangerous condition in [King's] … work" as well as a "delay or failure by [King] … to perform a contract or agreement in accordance with its terms."

58.     The exception to Exclusion m. for "loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use" does not apply because the damage to the engine did not occur after the Aircraft or engine was put to its normal use and MAG's claim does not involve the loss of use of other property.

59.     Exclusion j.(4), which states that coverage does not extend to "property damage" to "personal property in the care, custody, or control of the insured", may further preclude coverage to the extent MAG's claimed economic damages are associated with its loss of use of the Aircraft due to King's failure to return it within the contracted-for time, since the Action alleges that the Aircraft (not the engine) was at King's facilities pursuant to the AMA and "property damage" means, *inter alia*, "loss of tangible property that is not physically injured."

60.     Exclusion j.(6), which excludes "Property Damage to …: (6) that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it", bars coverage for MAG's claim for any additional repair and service costs for the engine.

61.     King's responsibilities for and actions of, *i.e.*, removing the engine from the Aircraft, preparing the engine for transport, obtaining the cradle (which it modified), mounting the engine into the cradle and placing the cradle onto the truck also constitute "your work" for purposes of this exclusion.

62.     As alleged in the Complaint, the property damage to the engine and the required repairs were because of King's incorrect performance of its work on the engine, namely the preparation of the engine for transport. Specifically, the Complaint alleges that King was grossly negligent in that it "failed to properly secure the engine to the cradle and failed to properly secure the cradle onto the truck." Moreover, the Complaint asserts that while in transit, the engine moved in the cradle, fell, and was severely damaged. It also alleges that "[t]he damage to the engine was caused by the gross negligence of King" and that "[a]s a direct and proximate result of King's gross negligence, MAG has incurred significant additional repair costs to the engine …." Thus, the second element of Exclusion j.(6), that the damage be the result of King's work that was incorrectly performed on the engine, is met.

63.     The exception to this exclusion – that it "does not apply to Property Damage included in the products-completed operations hazard" – is inapplicable here.

64.     In pertinent part, the definition of the "products-completed operations hazard" provides that it "[d]oes not include … Property Damage arising out of … (1) the transportation of property …." There are no allegations in the Complaint indicating that the remaining exception language of the definition ("unless the injury or damage arising out of a condition in or on a vehicle not owned or operated by you, and that the condition was created by the loading or unloading of that vehicle by any Insured") is applicable.

65.     Exclusion s. – the electronic data exclusion – bars any damages claimed as a result of MAG's alleged loss of use of the promised software  since "[d]amages arising out of ... loss of use of ... electronic data," is specifically excluded under Coverage A.

66.     Coverage A of the Policy, therefore, does not provide coverage for the Underlying Action.

67.     Additionally, the Policy's "Hangarkeeper's Liability Coverage" (Coverage D), which covers "damages because of **loss** to **aircraft** … occurring while such aircraft is in the care, custody or control of the Insured for safekeeping, storage, service or repair", is not applicable since the incident and resulting damage *to the engine* occurred after the engine left the care, custody or control of King and there was no accident resulting in direct damage to the Aircraft.

68.     Therefore, Coverage D of the Policy does not provide coverage for the Underlying Action.

**COUNT I – DECLARATORY JUDGMENT**
**NO DEFENSE OR INDEMNITY IS OWED UNDER COVERAGE A OR COVERAGE D**
**OF THE POLICY UNDER THE APPLICABLE TERMS AND EXCLUSIONS**

69.     AGR US repeats and reiterates each and every allegation made in paragraphs 1 through 64 as if fully set forth herein.

70.     AGR US reserved its rights to disclaim coverage on various grounds based on the terms, conditions, and exclusions of the Policy, including, without limitation, that:

a.   there is no coverage under Coverage A of the Policy because MAG's alleged loss of reputation is not damages because of an "Occurrence" or "Property Damage," as defined by the Policy, to which the insurance otherwise applies;

b.   there is no coverage under Coverage A of the Policy for MAG's claim for failure to provide the software because it does not allege an "Occurrence" or "Property Damage," as defined by the Policy, to which the insurance otherwise applies;

c.   there is no coverage under the Policy for the allegation that King failed to provide the software by January 7, 2019, because it does not allege an

"Occurrence" or "Property Damage," as defined by the Policy, during the relevant policy period and to which the insurance otherwise applies;

d.  there is no coverage under Coverage A of the Policy to the extent that the engine was repaired at King's expense and MAG's claims are in fact limited to the consequences of King's alleged failure to timely deliver the Aircraft and software, since MAG's claims would not involve damages because of an "Occurrence" or "Property Damage" to which the insurance otherwise applies;

e.  there is no coverage under Coverage A of the Policy, even to the extent the same may be otherwise triggered, based upon Exclusions 2.b – the "assumption of liability" exclusion; 2.m. – the "impaired property" exclusion; Exclusion 2.j.(4) – the "care, custody or control" exclusion; Exclusion 2.j.(6); and Exclusion 2.s. – the "electronic data" exclusion.

f.  there is no coverage under Coverage D of the Policy because the "loss" to the engine did not occur while in the care, custody or control of King and there was no accident resulting in direct damage to the Aircraft.

71.  By reason of the foregoing, under the terms, conditions, and exclusions of the Policy, AGR US therefore has no duty to defend or indemnify King with respect to the Underlying Action.

72.  AGR US is entitled to a declaratory judgment that, under the terms, conditions, and exclusions of the Policy, no coverage is available to King for the Underlying Action, there is no duty under the Policy to defend, pay defense costs, or indemnify King from any claims,

liabilities, causes of action, or damages which are the subject of the Underlying Action, and that Insurers may discontinue and withdraw their defense of King in the Underlying Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff AGR US prays for judgment in its favor, for itself and for the Concurrent Insurers, and against all Defendants as follows:

A.      Declaring that under the terms, conditions, and exclusions of the Policy, no coverage is available to King for the Underlying Action;

B.      Declaring that AGR US owes King no duty under the Policy to defend, pay defense costs, or indemnify King for any claims, liabilities, causes of action, or damages which are the subject of the Underlying Action;

C.      Declaring that AGR US may discontinue and withdraw its defense of King in the Underlying Action; and

D.      Awarding AGR US such other and further relief as the Court may consider equitable, fair and proper.

DATED this 18th day of June, 2019.

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: */s/Melinda R. Burke*_____
        Melinda R. Burke, Esq.
        State Bar No. 03403030
        9111 Cypress Waters, Blvd., Suite 250
        Dallas, Texas 75019
        Tel: (214) 420-5500
        Fax: (214) 420-5501
        Email: burke@mdjwlaw.com

SKARZYNSKI, MARICK & BLACK LLP

        Andrew T. Houghton, Esq. (*pro hac vice application to be filed*)

New York State Bar No. 2288116
Karen Schnur, Esq. (*pro hac vice application to be filed*)
New York State Bar No. 5090170
One Battery Park Plaza, Fl. 32
New York, New York 10004
Tel: (212) 820-7700
Fax:  (212) 820-7740
Email: ahoughton@skarzynski.com
        kschnur@skarzynski.com

*Attorneys for Plaintiff, Allianz Global Risks US Insurance Company, for itself as Lead Insurer and for all Concurrent Insurers under Policy No. A2GA000832617AM*

Of Counsel:

Sheryl Kao
State Bar No. 24036874
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
Tel: (214) 420-5500
Fax: (214) 420-5501
Email: kao@mdjwlaw.com